IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EGRES SOCIETY, CORP., et al.,   *
                                *
    Plaintiffs,               *
                                *   CIVIL ACTION FILE
    -vs-                      *
                                *   No. 1:18-cv-01586-TWT
CITY OF BROOKHAVEN, GEORGIA,    *
                                *
    Defendant.                *

**PLAINTIFFS' BRIEF IN OPPOSITION TO
CITY OF BROOKHAVEN'S MOTION TO DISMISS**

I.   <u>Introduction</u>.

In their complaint, the plaintiffs have detailed the City's recent efforts to step-up code enforcement (e.g., building, health, and fire inspections) against its African American and Latino restaurants.  Along with this targeting, the City adopted an ordinance barring "disc jockey[s]" from working in restaurants.  All this, the plaintiffs believe they can prove, is part of the City's plan to eliminate (or severely curtail) the plaintiffs' type of business.  Here, through a motion to dismiss, the City first wants to argue the merits, and, failing that, wants this Court to abstain from hearing the federal claims.  As explained below, this forum is precisely the place to raise such claims.

    A.   <u>The plaintiffs have standing to bring their claims</u>.

The City says the plaintiffs "have not alleged facts "showing that they qualify as restaurants."  [Doc. 8-1 at 3.][1]  Not true.  The plaintiffs pled that the City issued alcohol licenses to them for years, each time recognizing them as restaurants.  And they have pled that they wish to remain restaurants.  Perhaps viewing this as pleading a conclusion rather than as pleading a fact, the City insists the plaintiffs must plead that they satisfy the "60% requirement for food sales."  [Doc. 8-1 at 6.]  That too is not true.  In order to show redressability in this case, the plaintiffs need not plead that they have sufficient parking spaces, adequate hood ventilation systems, and functioning grease traps; such benign criteria are ancillary to the issue at hand.  While standing is certainly required to invoke the Court's subject matter jurisdiction, it should not be used as a shield to litigating meritorious claims.

The complaint is clear.  In it the plaintiffs are together referred to as "the Restaurants."  [Doc. 1, ¶ 81.] In late 2014, after XS obtained its certificate of occupancy, the City issued XS a license to operate a restaurant serving alcoholic beverage of liquor, beer and

---

[1] The plaintiffs use the page numbers generated by the CM/ECF system.

-2-

wine.  [Doc. 1, ¶ 36.]  On June 29, 2015, the City issued a certificate of occupancy for Josephine's location (Suite 610).  It describes the structure as a "commercial-restaurant."  [Doc. 1, ¶ 42.]  On July 29, Josephine applied for and obtained an occupational tax certificate from the City. In that application, Josephine indicated that its dominant business activity would be a "restaurant."  [Doc. 1, ¶ 43.]  In 2016, Medusa applied to the City for an alcoholic beverage license to operate a restaurant serving liquor, beer and wine with Sunday sales. [Doc. 1, ¶ 70.]  As stated in their renewal applications, the Restaurants were properly categorized as "restaurants": None has a stage; none has a dance floor; and none employs what it considers a classic "disc jockey."  See § 4-103 (defining "entertainment venue"). [Doc. 1, ¶ 83.][2]

Discovery will show that the plaintiffs each initially applied to the City for an alcohol license as a restaurant (Josephine in 2015; Medusa and XS in 2014); their certificates of occupancy classify them as restaurants; their business licenses list them as full-service

_____

[2] Indeed Count 4 asserts a claim for the City's failure to "recognizing XS's prior nonconforming use as a restaurant or a late night establishment."  [Doc. 1, ¶ 117.]

restaurants; and each renewal application (before the new categories in Ordinance 2017-10-02) for the plaintiffs were as 'restaurants.'[3]

Departing the four corners of the complaint, the City offers commercial advertisements posted by the plaintiffs and assumes, based on these ads, the plaintiffs must "derive the overwhelming majority of their income from alcohol sales and cover charges, not from the sale of 'prepared meals and food.'" [Doc. 8-1 at 6.] But these advertisements are not

---

[3] Even the preliminary evidence tendered in this case backs up these allegations. In his affidavit supporting the motion for preliminary injunction, Besher states: "In 2016, Medusa applied to the City for an alcoholic beverage license to operate a restaurant serving liquor, beer and wine with Sunday sales." [Doc. 3-6, ¶ 5.] Besher repeatedly states that his establishment is a "restaurant." [Doc. 3-6, ¶ 4, 5, 6.] Kedir likewise averred that "In February 2014, XS applied to the City for a Special Land Use Permit ("SLUP") to operate a late-night establishment within 1,500 of residentially zoned property. In that application, XS proposed to operate as an upscale full-service restaurant. It also indicted that it would to employ a deejay but would use low noise so that customers could converse with one another." [Doc. 3-7, ¶ 4, Kedir repeatedly refers to his establishment as a "restaurant." [Doc. 3-7, ¶¶ 2, 4, 5, 7, 9, & 10.] Deutou too averred that "On June 29, 2015, the City issued a certificate of occupancy for Josephine's location (Suite 610). It describes the structure as a "commercial-restaurant." [Doc. 3-5, ¶ 4.] And that "On July 29, Josephine applied for and obtained an occupational tax certificate from the City. In that application, Josephine indicated that its dominant business activity would be a "restaurant." [Doc. 3-5, ¶ 5.] Deutou repeatedly refers to his establishment as a "restaurant." [Doc. 3-7, ¶¶ 4, 5, 9, 11, 15, 16, 17, 18, & 19.]

central to the claims in this lawsuit, and the inferences that the City draws from them are disputed.  They are not properly considered on the City's motion.

What the City is really challenging here are the merits of the case.  But whether the City ultimately proves its version of the facts is simply not material at this stage. Cf. Moody v. Holman, 887 F.3d 1281, 1287 (11th Cir.), cert. denied sub nom. Moody v. Stewart, 138 S. Ct. 1590 (2018)(holding standing exists and noting "If Alabama were correct, then a plaintiff who ultimately loses on the merits (and by definition did not have a substantive right to relief) would never have had standing to pursue his or her claims in the first place. The law does not countenance, much less demand, such a result.")(citing Bell v. Hood, 327 U.S. 678, 682 (1946)("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."), and Chafin v. Chafin, 568 U.S. 165, 174 (2013)(explaining that an argument regarding "the legal availability of a certain kind of relief" goes to the merits, and that the "prospects of success are therefore not pertinent to the mootness inquiry")).

Ignoring the complaint, the City argues that the

-5-

plaintiffs "are all 'nightclubs,' a kind of 'late-night establishment' that is prohibited under the Zoning Ordinance from operating within 1,500 feet of residential areas." [Doc. 8-1 at 3; see also id. at 8-10.] The City cites to Doc. 7-5 for the proposition that "by selling alcohol, employing DJs, and allowing dancing," the plaintiffs "qualify as the 'nightclub' variety of a late night establishment."  [Doc. 8-1 at 9.]  Yet nowhere does Doc. 7-5 say the plaintiffs allow dancing or qualify as nightclubs. There is a good reason for that.  Years ago, the City essentially gave up on its 'late-night establishment' ordinance, as discovery will show, which is why it has knowingly allowed not just Medusa and Josephine to operate after 12:30 p.m., but it has allowed every alcohol licensed venue located within 1,500 feet of a residentially zoned property to operate during those hours (without a SLUP).[4]

Going further into the merits of the case, the City suggests that because each plaintiff "is within 1,500 feet of residentially zoned property, ... they cannot operate at their current locations without a special land use permit."

---

[4] If the Court believes that this fact is material to establish standing, the plaintiffs request discovery and an opportunity to amend their complaint to allege and prove the fact.

[Doc. 8-1 at 9 (citing Doc. 7-6 (measurements from each establishment to residential areas within 1,500 feet).)   In discovery no one will dispute that the plaintiffs are located within 1,500 of residential property.  But that is not the issue.  The City abandoned enforcement of its SLUP requirement for late-night establishments.

Delving further into them merits, the City argues that even though XS has a special land use permit, that permit is immaterial because XS "obtained the permit under false pretenses."  [Doc. 8-1 at 9.]  Again referencing exhibits outside the complaint, the City says that "XS has been operating a nightclub, in direct contravention of its promise."  [Doc. 8-1 at 9.]  Ths is more smoke and mirrors.  But is also disputed -- XS is not a "nightclub" nor, as pled in the complaint, has the City ever refused to renew the alcohol license on the grounds that XS is a nightclub.  What the City indirectly argues for on its 12(b)(6) motion is a summary revocation of XS's SLUP status.  For these reasons, the plaintiffs have standing to bring their claims.

B.   <u>Because the resolution of the state proceeding will not preclude the adjudication of the federal claims here, by definition there is no claim-splitting.</u>

In <u>Vanover v. NCO Fin. Servs., Inc.,</u> which was a "first

-7-

impression in this Circuit," the Eleventh Circuit held that "the test for claim-splitting 'is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.'" 857 F.3d 833, 836, 841 (11th Cir. 2017)(quoting Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011)). In applying the claim-splitting test, courts are to apply the rules of res judicata. See Katz, 655 F.3d at 1219 ("The proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis.").

The term "res judicata" encompasses the related doctrines of claim preclusion and issue preclusion (also known as collateral estoppel). Cmty. State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011). In determining the proper preclusive effect in federal court of a state court decision, federal law generally dictates that a federal court is to apply the state court rule of preclusion. Id. at 1263 (citing Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006)).

Under Georgia law, "claim preclusion will bar a plaintiff's action if the plaintiff has brought another action [1] based on the same subject matter, [2] the

-8-

plaintiff had a full and fair opportunity to litigate the other action, [3] the other action resulted in an adjudication on the merits, <u>and</u> [4] the other action was against the same defendant or its privy." <u>Sorrells Const. Co. v. Chandler Armentrout & Roebuck, P.C.</u>, 214 Ga. App. 193, 194 (1994)(citing <u>Fowler v. Vineyard</u>, 261 Ga. 454(1) (1991); O.C.G.A. § 9-12-40)(emphasis added).

Applying the test from <u>Sorrells</u>, the City cannot satisfy the elements of preclusion, assuming there were a final judgment in the certiorari proceeding, meaning that there is no claim-splitting under <u>Vanover</u>.  The City cannot demonstrate that the state certiorari proceeding and this federal action are "based on the same subject matter" or that "the plaintiff[s] had a full and fair opportunity to litigate the other action."  Because the only element the City can establish is mutuality of parties, its claim-splitting defense fails.

> 1.   <u>The certiorari proceeding is limited in scope</u>.

Georgia law provides for review of quasi-judicial decisions, by writ of certiorari, from any inferior tribunal, <u>see</u> O.C.G.A. § 5-4-1, as does Georgia common law, <u>see</u> <u>City of Cumming v. Flowers</u>, 300 Ga. 820, 823 (2017).  On

certiorari from an inferior tribunal to a superior court,
"[t]he scope of review shall be limited to all errors of law
and determination as to whether the judgment or ruling below
was sustained by substantial evidence." O.C.G.A. § 5-4-12.

The "subject matter" for preclusion purposes in the
certiorari proceeding is inherently limited to the City of
Brookhaven Alcohol Board's denial of the plaintiffs' liquor
license renewal applications.  The plaintiffs cannot seek
damages in the state action.  See, e.g., Lockette v. City of
Albany, No. 1:05 CV 39(HL), 2005 WL 1926578, at *1 (M.D. Ga.
Aug. 11, 2005)(recognizing that there is no right to seek
damages in certiorari proceedings).  Further, the federal
plaintiffs cannot raise affirmative constitutional claims,
cannot enjoin the operation of the City's unconstitutional
zoning scheme, and cannot seek attorney's fees under 42
U.S.C. § 1983 or O.C.G.A. § 13-6-11.  See id. at *4
("[O]ther causes of action or forms of relief may not be
pursued within the writ of certiorari."); City of Atlanta v.
Jackson, 263 Ga. 426, 435 S.E.2d 212, 214 (1993)(holding
that where the writ of certiorari provided an adequate legal
remedy for review of a county board's authority, the
petitioner on the writ could not also seek equitable
relief).

Here, the plaintiffs seek relief that is not available to them in the certiorari proceedings.  They seek an injunction barring future enforcement of the City's licensing scheme on a variety of constitutional grounds, including the facial invalidity of the scheme on First Amendment and the as-applied validity of the scheme on selective enforcement grounds.  They seek relief under the Takings Clause.  And the plaintiffs seek damages and injunctive relief that they cannot obtain in the state certiorari proceedings.  Application of the claim-splitting doctrine on these facts would raise serious constitutional concerns because it would bar the plaintiffs from seeking a damages remedy in any forum, and it would severely circumscribe the equitable relief the plaintiffs could obtain.  Even if the state certiorari proceeding terminated before this action, preclusion could not bar this federal action.  Thus claim-splitting is not applicable.

    2.    <u>The certiorari proceeding does not provide a full and fair opportunity to litigate the relevant claims</u>.

A key tenet of res judicata is that before a party is barred from asserting a claim, the party must have been afforded at least one opportunity to fully and fairly litigate the claim.  This requirement is embodied into the

Georgia law of preclusion, which has, as one element, the requirement that "the plaintiff[s] had a full and fair opportunity to litigate the other action." Sorrells, 214 Ga. App. at 194; see also Morris v. May, 570 F. App'x 903, 905 (11th Cir. 2014)("[P]reclusion only applies when a party has had a 'full and fair opportunity to litigate' the claims and issues settled in a previous suit." (quoting Taylor v. Sturgell, 553 U.S. 880, 892–93 (2008)). Because of the procedural shortcomings inherent to a certiorari proceeding, the plaintiffs would not be entitled to a full and fair litigation of the claims that they raise in this federal suit.  This lack of a full and fair opportunity to litigate represents a separate and independently sufficient ground upon which to deny the City's claim-splitting defense.

There was no opportunity to adequately develop a legal and factual record in the Alcohol Board proceedings, and by definition, the certiorari proceeding is limited to the record below.  Under Georgia law, the scope of review on certiorari is limited to those errors raised and presented for decision in the lower tribunal and raised in the petition.  See Willis v. Jackson, 148 Ga. App. 432, 434 (1978).  Further, "[t]he appropriate standard of review to be applied to issues of fact ... is whether the decision

-12-

below was supported by any evidence." <u>City of Atlanta Gov't
v. Smith</u>, 228 Ga. App. 864, 865 (1997).

The procedures of the City's Alcohol Board only allow
for limited factual development.  The appeal process allows
for submissions on such matters including [1] consideration
that acts were not known or should not have been known to
the licensee, [2] were not condoned by the licensee, [3]
that the licensee has established practices to prevent such
violations from occurring, and [4] that the licensee has not
failed to properly train or supervise the employees to
prevent the violation from occurring.  <u>See</u> Brookhaven Code
Ord. Sec. 4-211(b).  None of the facts or law related to
Counts 1-5 of the plaintiffs' federal complaint could have
or would have been considered before the Alcohol Board.

Other deficiencies of certiorari prevent res judicata
effect to attach.  First, in certiorari proceedings, there
is no right to discovery, which means that the federal court
plaintiffs were not able to fully litigate even their
entitlement to a liquor license renewal.  <u>See</u> Charles Alan
Wright, et al., 18 <u>Fed. Prac. & Proc. Juris.</u> § 4423 (3d
ed.)("A number of opinions, for example, have suggested that
differences in the rules of discovery or inability to make
full use of discovery or evidence in the first forum may

-13-

justify subsequent relitigation."); <u>West v. Ruff</u>, 961 F.2d
1064, 1066 (2d Cir. 1992)(one factor in court's decision
that plaintiff lacked a full and fair opportunity to
litigate his claim in state court was lack of sufficient
discovery relating to availability of witnesses).  Second,
there is no right to seek damages in certiorari proceedings.
<u>See, e.g.</u>, <u>Lockette</u>, 2005 WL 1926578, at *1.  In this case,
the plaintiffs' complaint requests compensatory damages as
relief.  [Compl. at 45.]  Georgia law allows for the
recovery of costs, only, on certiorari. O.C.G.A. § 5-4-16.
Where a party cannot even obtain the anything close to the
type of relief they seek, there has not been a full and fair
litigation.

Based on the fundamental difference in the nature of
the state certiorari proceedings and the federal civil
rights action, most especially the limited scope of the
issues involved in the certiorari action and the limited
tools available to develop even those issues, the federal
civil rights suit would not be fully precluded by any
hypothetical resolution of the certiorari proceedings.  The
claim-splitting doctrine does not apply.

C.   <u>The plaintiffs are willing to dismiss their
state certiorari action were this Court to
exercise its supplemental jurisdiction to</u>

<u>hear those claims</u>.

The plaintiffs have each filed certiorari petitions in state court on their alcohol license denials.  Certiorari proceedings are considered "special statutory proceedings" under O.C.G.A. § 9-11-81 and thus the Civil Practice Act applies.  <u>See</u> <u>Buckler v. DeKalb Cty.</u>, 290 Ga. App. 190, 191 (2008).  The certiorari proceedings may be dismissed voluntarily by the plaintiffs.  O.C.G.A. § 9-11-41(a)(1). Federal courts have the power to assume supplemental jurisdiction over state court certiorari proceedings.  <u>See</u> <u>generally</u>, <u>Flava Works, Inc. v. City of Miami</u>, 609 F.3d 1233 (11th Cir. 2010)(holding that district court properly assumed supplemental jurisdiction to consider a certiorari petition directed to a Florida code enforcement board).

Here, the plaintiffs wish to dismiss their state court petition for certiorari, for reasons described below.  Once there are no longer pending state court proceedings for this court to review, the City's bases for arguing claim-splitting disappear.  If the City is truly concerned with docket management, this posture would best serve the judicial interests that motivate the claim-splitting doctrine, which is aimed to "conserve[] judicial resources." <u>Vanover</u>, 857 F.3d at 841.  Dismissal of the state-law

certiorari petition while this action continues, should this
Court assume jurisdiction of the certiorari proceeding,
would "shield parties from vexatious and duplicative
litigation," id. at 843, and dismissal for claim-splitting
would be all the more inappropriate in this case.

    D.   *Pullman* absention is inappropriate.

    The City urges the Court to exercise Pullman abstention
rather than assume jurisdiction over this case. [See Doc.
8-1 at 13 (citing R.R. Comm'n of Tex. v. Pullman Co., 312
U.S. 496 (1941)). Pullman abstention of course is a narrow,
judicially created exception to the general grant of federal
jurisdiction found in Article III of the Constitution.
Abstention under Pullman is also discretionary rather than
jurisdictional. See Siegel v. LePore, 234 F.3d 1163, 1174
(11th Cir. 2000)(explaining that Pullman "abstention is
discretionary").

    "[T]here is a presumption in favor of retention of
federal jurisdiction once obtained." BT Inv. Managers, Inc.
v. Lewis, 559 F.2d 950, 953–54 (5th Cir. 1977). To overcome
that presumption, two elements must be met: (1) the case
must present an unsettled question of state law, and (2) the
question of state law must be dispositive of the case or
likely to materially alter the constitutional question

-16-

presented.  <u>Siegel</u>, 234 F.3d at 1174; <u>accord</u> <u>Nasser v. City</u>
<u>of Homewood</u>, 671 F.2d 432, 439 (11th Cir. 1982)("The issues
of state law must be substantially uncertain or ambiguous,
necessitating a construction by the state supreme court.
Moreover, there must be a likelihood that their resolution
would moot or present the federal constitutional questions
in a different posture.").  Even after the two prongs of the
test are met, the Court still may exercise its discretion to
retain jurisdiction.  <u>Cate v. Oldham</u>, 707 F.2d 1176, 1184
(11th Cir. 1983).  Here, the City fails to meet either prong
of this test, and thus cannot overcome the strong
presumption in favor of this Court's due application of its
jurisdiction.  Finally, <u>Pullman</u> abstention is inappropriate
in situations like this one, where a plaintiff has
challenged laws on the basis that they restrict free
expression.

    1.   <u>The first prong of the *Pullman* test is not</u>
        <u>met</u>.

The City argues that the Court should abstain under
<u>Pullman</u> based on the existence of one disputed issue, of the
many underlying this action: whether as the plaintiffs
contend, the restaurants' license fees are capped at $5,000,
per O.C.G.A. § 3-4-48; or whether as the City contends, the

fees are governed by a different Georgia statute and thus
not subject to a cap.  The City urges there is a lack of
judicial interpretation of O.C.G.A. § 3-4-48.  [See Doc. 7
at 16 ("Thus, the issue has not been definitively settled by
the Georgia courts; in Pullman terms, it is unsettled.").]

Taking the City's argument at face value, it has failed
to satisfy the first prong of the Pullman test.  It is
established (and commonsensical) that the absence of a
"definitively settled" point of state law will not deprive a
federal court of jurisdiction.  See BT Inv. Managers, Inc.
v. Lewis, 559 F.2d 950, 954 (5th Cir. 1977)("While it is
true ... that the statutes here in question have yet to be
construed by the [state] courts, mere absence of judicial
interpretation does not necessarily render their meaning
unsettled or uncertain.").  Here, the City has not shown
that the state law issue is "substantially uncertain or
ambiguous [and] necessitating a construction by the state
supreme court."  Nasser, 671 F.2d 432, 439.  Similarly, the
provision in question is not a new one.  Cf. Richard H.
Fallon, Jr. et al., The Federal Courts and the Federal
System 1067 (6th ed. 2009)("The newness of a state statute
and the total absence of judicial precedent are clearly
significant considerations.").  An old statute that does not

affect the comity concerns underlying the Pullman doctrine
does not satisfy the requirement that state law be so
ambiguous or unsettled that it would be inappropriate for
construction by a federal court.  Thus, the City has failed
to clear the first hurdle, meaning that it cannot overcome
the presumption against abstention.

 2. The second prong of the *Pullman* test is not
 met.

 Here, the plaintiffs have challenged an array of
enactment and enforcement activities that, at their core,
affect federal constitutional rights.  In mounting its
Pullman defense, the City has pointed only to a single
purportedly open question of state law that occupies only a
small portion of the frame of this litigation.  In any
event, regardless of whether the state law issue is settled,
and whatever its resolution in state court, the bulk of the
federal law issues will remain.  Resolution of the state law
issues will not moot the matter or substantially change its
posture, meaning that there is neither comity not efficiency
to be gained were this Court to abstain.

 The City urges this Court to exercise Pullman
abstention based on the unavailability of state court
opinions on the interpretation of a particular statute,

O.C.G.A. § 3-4-48.  It suggests that resolution of this purported question could moot the action because "the Ordinance's higher fees will be deemed invalid under state law."  [Doc. 8-1 at 15.]

But in this case, the plaintiffs have requested additional forms of relief, including damages, for additional causes of action, such that resolution of the purported issue identified by the City will not moot the action.  The plaintiffs seek damages for the City's use of its alcohol code, and its building and fire codes, to shut down particular restaurants for reasons that are constitutionally impermissible.  The plaintiffs allege that numerous provisions of the Brookhaven Code have led to violations of their First Amendment rights (count 1),[5] Due Process rights (count 2),[6] and rights to Equal Protection

---

[5] The Plaintiffs' restaurants have been reclassified as "entertainment venues" under provisions of Brookhaven's Municipal Code.  Such restaurants are no longer permitted to sell alcoholic beverages on Sundays, which are traditionally the busiest day for such restaurants. [Doc. 1, ¶ 24.]

[6] Under the Alcohol Code as amended, entertainment venues are required to retain additional security personnel and off-duty police officers. [Doc. 1, ¶¶ 25, 26.] These provisions affect the Plaintiffs irrespective of the license fee issue.

(count 3).[7]  Those violations are not caused solely by operation of the a particular licensing fee.

Because the plaintiffs seek multiple forms of relief by challenging numerous provisions of the City Code, the potential resolution of the single state law question identified by the City fails the second prong of the Pullman test.  Abstention on these facts would amount to punting the federal issues to the state court which would possibly never hear them, while resolution of the state law issue would not be guaranteed.  On similar grounds, the Eleventh Circuit has found abstention to be an abuse of discretion.  See Pittman v. Cole, 267 F.3d 1269, 1288 (11th Cir. 2001)("[W]e conclude that the district court's abstention order is defective both because it granted the plaintiffs relief of potentially

---

[7] In 2015, Plaintiff Josephine Restaurant and Lounge was targeted for heavy-handed code enforcement. [Doc. 1, ¶¶ 49-52.] Josephine was also subjected to a music and dancing ban in a manner that was not applied to other alcohol service businesses in the City. [Doc. 1, ¶¶ 53-64.]

Throughout 2017, the City subjected all three restaurants to stepped-up enforcement of city and county ordinances. The City assembled officials from DeKalb County police and fire departments, as well as city police, code enforcement, building and fire personnel, to inspect the restaurants with greater frequency than other alcohol licensed establishments. [Doc. 1, ¶ 81.]

indefinite duration without ensuring that the state law issues would ever be presented to the state courts, and because the decision to abstain was designed to have the state courts decide the federal constitutional issues that the plaintiffs had first presented to the federal courts.").

More fundamentally, in this case, the plaintiffs do not allege a facial constitutional challenge to the licensing fee question embodied in O.C.G.A. § 3-4-48.  Rather, the plaintiffs maintain that the City violated state law in imposing this licensing fee, and, separately, the plaintiffs maintain that the City violated federal law under a series of distinct theories with different factual bases. Abstention here would be inappropriate because those issues could not be resolved no matter how a state court decides the O.C.G.A. § 3-4-48 question.

3.   Abstention is especially disfavored in challenges to laws that burden free speech.

The Supreme Court has held that Pullman abstention is particularly suspect in cases where statutes are attacked on their face as abridging free expression.  See Zwickler v. Koota, 389 U.S. 241, 252 (1967)("[T]o force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the

impermissible chilling of the very constitutional right he
seeks to protect."); Cate v. Oldham, 707 F.2d 1176, 1184–85
(11th Cir. 1983)("Given that this is a First Amendment case
alleging immediate and ongoing irreparable injury, and
considering the great costs imposed by abstaining in this
type of case, we decline to invoke Pullman abstention.").
In Count 1 of their complaint, the plaintiffs challenge
numerous provisions of the City's Code as violating the
First Amendment by chilling expressive conduct and otherwise
targeting protected forms of speech.  [Doc. 1, ¶ 106.]  They
allege irreparable injury based on denial of important
constitutional rights, including those protected by the
First Amendment.  The City thus have a particularly high bar
to overcome the presumption against Pullman abstention --
even if they could establish the elements of Pullman. Cf.
id. at 1184 (declining to abstain under Pullman despite
satisfaction of prerequisites).  However, because the City
has failed to clear either of the threshold limitations on
Pullman, its claimed entitlement to abstention should be
rejected.

    II.  Conclusion.

    For these reasons, the City's motion to dismiss should
be denied.

This 11th day of June, 2018.

Respectfully submitted,

WIGGINS LAW GROUP


BY:/s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:  (404) 659-2880
Facsimile:  (404) 659-3272
cary@wigginslawgroup.com

**CERTIFICATE OF SERVICE**

I certify that I have this day served upon the below-listed person a copy of the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO CITY OF BROOKHAVEN'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

        Scott D. Bergthold, Esq. and
        Bryan A. Dykes, Esq.
        Law Office of Scott D. Bergthold
        2290 Ogletree Ave, Suite 106
        Chattanooga TN 37421


        This 11th day of June, 2018.



                                    BY:/s/ Cary S. Wiggins
                                    Cary S. Wiggins
                                    Ga. Bar No. 757657

WIGGINS LAW GROUP
Suite 401
260 Peachtree St., NW
Atlanta, GA 30303
Telephone: (404) 659-2880
Facsimile: (404) 659-3274
www.wigginslawgroup.com
cary@wigginslawgroup.com