IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EGRES SOCIETY, CORP., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) No. 1:18-cv-01586-TWT |
| | ) |
| CITY OF BROOKHAVEN, GEORGIA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CITY OF BROOKHAVEN'S REPLY BRIEF
SUPPORTING MOTION TO DISMISS**

Plaintiffs' response to the City's motion to dismiss—and their arguments at the preliminary injunction hearing—confirm that the Court should dismiss this case.

**I. For two independent reasons, Plaintiffs redressability—and thus, standing—to bring their suit.**

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "'In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims,'" and "'the court is powerless to continue.'" *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (internal citations omitted).

### A. Plaintiffs do not allege facts showing they qualify as restaurants.

Plaintiffs: (1) sought on-premises alcohol licenses as "restaurants," (2) were denied same because the facts at a hearing showed that they are "entertainment venues" that did not submit the required fees, and (3) continue to sell alcohol while pursuing state-court challenges. The only type of on-premises consumption license that each sought was for a "restaurant."

In April 2018, Plaintiffs filed this suit to strike down the City's new (October 2017) alcohol Ordinance regulations relative to entertainment venues. But such a result would not redress Plaintiffs' grievance, because they still would not be entitled to the alcohol licenses that they seek.

This is because Plaintiffs all failed to clearly "allege facts demonstrating" that they meet the 60% food-sales requirement for restaurants. *Warth*, 422 U.S. at 518. Even if the entertainment rules were invalidated, the City could still deny the Plaintiffs' applications for licenses to operate as restaurants with on-premises alcohol consumption. Because Plaintiffs "fail to make the necessary allegations, [they have] no standing." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (internal markings omitted); *Maverick Media Grp. v. Hillsborough Cty.*, 528 F.3d 817, 820-21 (11th Cir. 2008) (directing trial court to dismiss case because county "could have denied Maverick's applications under an alternative, unchallenged provision of its sign ordinance").

In response, Plaintiffs tell us that (1) they refer to themselves as restaurants, (2) their original certificates of occupancy were for restaurants, and (3) "each renewal application (before the new categories in Ordinance 2017-10-02) for the plaintiffs were as 'restaurants.'" (R. 11 at 4.)

None of this carries the day. *FW/PBS, Inc.*, 493 U.S. at 230-36 (parsing various arguments for finding standing, and rejecting each).

As Plaintiffs recognize, the 2017 Ordinance adopted a new definition of "restaurant," and Plaintiffs' 2018 applications seeking licensure as same were denied. So previous references to "restaurant" are irrelevant.

The term "restaurant" is specifically defined in the Ordinance, so calling oneself a restaurant is a legal conclusion—not a factual allegation necessary to demonstrating standing. As currently defined, a restaurant includes only an eating and drinking establishment which "derives at least 60 percent of gross sales from sale of prepared meals and food…." (R. 3-2 at 10.) Thus, the "necessary allegation" for each plaintiff is that it "derives at least 60 percent of gross sales from the sale of prepared meals and food…."

But nowhere in the Complaint does any plaintiff make such an allegation. At the hearing, Plaintiffs assured the Court that they could amend their Complaint to add the simple allegations that it currently lacks. But that argument only concedes the deficiency in the present Complaint.

Plaintiffs have failed to make the necessary allegations, and thus lack standing.

Just as Plaintiffs' complaint failed to make the necessary allegations, Plaintiffs' affidavits all fail to allege that they meet the 60% food-sales threshold. *Cf. Flanigan's Enters., Inc. of Georgia v. Sandy Springs*, No. 1:09-cv-2747, Summary Judgment Order, R. 301, at 15-16 (N.D. Ga. April 9, 2014) ("[T]he plaintiffs stated that they serve food. However, the evidence submitted does not support that the plaintiffs' establishments fall within the definition of the term 'restaurant' as that term is defined by City Code § 6-103. Therefore, the court concludes that the plaintiffs do not possess standing to challenge § 6-103.").

Even if the Court were to credit Plaintiffs' "belief" that they are restaurants as somehow making the necessary allegation that Plaintiffs meet the 60% threshold, this is a disputed issue. The City's investigator who visited their premises recently "did not observe any food or any servers offering food service or delivering food to tables." (Ex. 12, Evans Aff. ¶¶ 3, 5.)

It is the burden of the "party who seeks the exercise of jurisdiction in his favor," *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), to show that he has standing, and each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of

proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (markings and citations omitted).

Plaintiffs have not met their burden. Even generously construing their affidavits, they have at most created an issue of fact on whether they qualify as restaurants. But that question cannot be resolved without an evidentiary hearing. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000) ("[A] district court *cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing.")

Plaintiffs' reliance on their certificates of occupancy ("C.O.") also fails. The City issues a C.O. before a business commences operation, and relies on the business's honesty in describing its proposed land use. The C.O. is not based on evidence that the business is actually being operated as the applicant said that it would be operated. The City submitted postings from the Plaintiffs' social media accounts (R. 7-1, R. 7-2, R. 7-3), as well as its investigator's affidavit, which suggest that the Plaintiffs' operate as nightclubs where food is absent or minimal, not the majority of the business.

For these reasons, the Court should dismiss Plaintiffs' Complaint. If the Court finds that an evidentiary hearing is in order, then the City asks for expedited discovery regarding Plaintiffs' food sales in advance of the hearing.

## B. Plaintiffs are late-night establishments per the Zoning Ordinance, and concede that they are within 1,500 ft. of residences.

The City's motion explained Plaintiffs lack redressability for another reason: the Zoning Ordinance does not allow a late-night establishment (which is defined without regard to expressive activity) in the C-1 district to operate within 1,500 feet of "any land zoned for residential use." (R. 7 at 7-10 (citing R. 7-4 at 21, § 27-1084(11).) Thus, the City could enforce the Zoning Ordinance to prohibit Plaintiffs' late-night operations, regardless of the outcome of Plaintiffs' challenge to the entertainment venue regulations.

Plaintiffs' response concedes that "the plaintiffs are located within 1,500 feet of residential property." (R. 11 at 7.) But Plaintiffs say that "[y]ears ago, the City essentially gave upon its 'late-night establishment' ordinance…." (*Id.* at 6.) Plaintiffs acknowledge the lack of evidence for this contention when they state, in a footnote, that "[i]f the Court believes that this fact is material to establish standing, the plaintiffs request discovery and an opportunity to amend their complaint to allege and prove the fact." (*Id.* at 6 n.4.)

Moreover, this contention contradicts Plaintiffs' own allegations that the City coerced Josephine's into signing an affidavit that it would operate only as a restaurant and not as a late-night establishment when it opened in Brookhaven in the fall of 2015. (R.1 at 20 ¶¶ 60-61 ("The proposed affidavit

6

also required Josephine to acknowledge that a 'violation of the terms of the Zoning Ordinance [will] result in the revocation of the occupational tax certificate and alcohol license….'").) This also contradicts the fact that the City has required XS to obtain a SLUP to operate in its location and to report its ongoing compliance to the City Council each year. (Ex. 11 City's Certified Records 182 ¶ 6; R.1 at 14-15 ¶ 34.) Thus, Plaintiffs' own allegations undermine its recent assertion that the Zoning Ordinance is a dead letter.

In any event, Plaintiffs are making an estoppel argument. They theorize that the City cannot rely on the Zoning Ordinance's prohibition on late-night establishments within 1,500 feet of a residential area because the City has not enforced that requirement in the past, or has not enforced it uniformly. But as this Court explained in a similar case:

> "[N]ot even estoppel can legalize or vitalize that which the law declares unlawful and void." Even if City officials knew and did nothing about Plaintiffs' illegal activities, their delay – interpreted as passive approval – would be an *ultra vires* act. "The public may not be estopped by the acts of any officer done in the exercise of an unconferred power."

*Cheshire Bridge Holdings, LLC v. Atlanta*, No. 1:15-cv-3148-TWT (N.D. Ga. Jan. 3, 2018) (citing, in footnotes, *Corey Outdoor Advert., Inc. v. Bd. of Zoning Adjustments of City of Atlanta*, 254 Ga. 221, 224 (1985) (quoting *Fluornoy v. Highlands Hotel Co.*, 170 Ga. 467, 471(1) (1930), and O.C.G.A. § 45-6-5)).

7

Finally, XS cannot rely on its Special Land Use Permit ("SLUP"). The City's evidence shows that it is operating in violation of multiple provisions of its SLUP (including the prohibition on operating a nightclub), and therefore cannot claim protection from it. (Ex. 11 at 181-182; R.7-7 at 2.)

Because the City is not estopped from enforcing the Zoning Ordinance's prohibition against late-night establishments within 1,500 feet of residential areas, Plaintiffs lack redressability (and thus, standing) to challenge the Alcohol Code's entertainment-related regulations. Thus, this Court should dismiss their claims. *KH Outdoor, LLC v. Clay Cty.*, 482 F.3d 1299, 1303 (11th Cir. 2007); *Maverick Media Group, Inc. v. Hillsborough Cty.*, 528 F.3d 817, 820-22 (11th Cir. 2008) (collecting cases from various circuits that are in accord with *KH Outdoor* and hold that where another, unchallenged provision of law *could have been* interposed to deny plaintiff's application, the plaintiff lacks standing because its injury in fact under the provision that was applied to it is not redressable).

## II. Plaintiffs' complaint should be dismissed for improper claim-splitting.

Plaintiffs' argument against dismissal for claim-splitting is without merit.

First, Plaintiffs replace the Eleventh Circuit's two-factor claim-*splitting*

8

test with Georgia's four-step test for whether claim *preclusion* applies. (R. 11 at 8-9 (discussing *Sorrells Const. Co. v. Chandler Armentrout & Roebuck, P.C.*, 214 Ga. App. 193 (1994).) The former, not the latter, governs here.

Under the two-factor test for claim splitting, Plaintiffs cannot deny that their state-court cases and this case (1) involve the same parties and their privies, and (2) arise from the same transaction or series of transactions. Indeed, Plaintiffs admit that their state and federal cases are "inextricably intertwined" and "derive from the same common nucleus of operative facts." (R. 1 at 43 ¶ 127.)

Plaintiffs raised the same constitutional claims in their certiorari actions as they raise here. (R. 7-8, R. 7-9, and R. 7-10.) They present no reason why the constitutional claims they raised in state court cannot be litigated there. Indeed, Plaintiffs overlook that Georgia law that requires them—as parties aggrieved by a municipal, quasi-judicial decision—to pursue constitutional challenges to the ordinances at issue in that decision by means of certiorari and not a separate lawsuit. *10950 Retail, LLC v. City of Johns Creek*, 299 Ga. App. 458 (2009).

Nor are Plaintiffs unable to pursue, in addition to their certiorari petition, a complaint for damages—just as Plaintiffs have combined a request for damages with a separate cause of action for certiorari review in their

9

federal complaint. *Mangram v. City of Brunswick*, 324 Ga. App. 725, 728 (2013) ("Mangram also argues that the trial court erred by dismissing his claim for damages. We agree. The defendants did not seek dismissal of Mangram's damages claim. Instead, the motion to dismiss requested that the trial court dismiss only his petition for writ of certiorari. Therefore, the trial court erred by dismissing Mangram's damages claim.")

For these reasons, Plaintiffs' effort to justify their claim-splitting by denigrating the value of certiorari review in state court is insufficient to defeat dismissal on these grounds. They bring the same claims in successive actions, and minor variations between them are immaterial. *Vanover*, 857 F.3d at 842 ("[T]he distinction Vanover draws between [her two cases] is artificially narrow and runs contrary to the prohibition against bringing a successive cause of action from the same nucleus of operative facts.").

Because Plaintiffs have engaged in improper claim-splitting, this Court should dismiss the present case. *Id.* at 843.

## Conclusion

For the foregoing reasons, the City respectfully requests that the Court grant its motion to dismiss.

Dated: <u>May 25, 2018</u>                    Respectfully submitted,

s/ Scott D. Bergthold
Scott D. Bergthold, Ga. Bar No. 202030
Law Office of Scott D. Bergthold, P.L.L.C.
2290 Ogletree Ave., Suite 106
Chattanooga, Tennessee 37421
(423) 899-3025 (phone)
(423) 899-3029 (fax)
sbergthold@sdblawfirm.com

Attorney for City of Brookhaven

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Cary S. Wiggins

s/ Scott D. Bergthold
Scott D. Bergthold, Ga. Bar No. 202030
Attorney for City of Brookhaven

LAW OFFICE OF SCOTT D. BERGTHOLD
2290 Ogletree Avenue, Suite 106
Chattanooga, Tennessee 37421
Telephone: (423) 899-3025
E-mail: sbergthold@sdblawfirm.com