IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EGRES SOCIETY, CORP.
DOING BUSINESS AS
JOSEPHINE'S, et al.,

    Plaintiffs,

      v.

    CIVIL ACTION FILE
    NO. 1:18-CV-1586-TWT

CITY OF BROOKHAVEN, GEORGIA,

    Defendant.

## OPINION AND ORDER

This is an action seeking to enjoin the Defendant's new Alcoholic Beverage Ordinance. It is before the Court on the Plaintiffs Egres Society, Corp., Medusa Restaurant & Lounge, LLC, and XS Restaurant & Lounge, LLC's Motion for Preliminary Injunction [Doc. 3], and on the Defendant City of Brookhaven's Motion to Dismiss [Doc. 8]. For the following reasons, the Plaintiffs' Motion for Preliminary Injunction is GRANTED, and the Defendant's Motion to Dismiss is DENIED.

## I. Background

The Plaintiffs are a group of African American owned nightclub/restaurants that operate within the borders of the Defendant City of Brookhaven, Georgia. The Plaintiffs serve a predominately African American

and Latino clientele.[1] All three also employ deejays during their late night hours.[2]

On October 10, 2017, the City overhauled its alcohol license regulations with the adoption of a new Alcoholic Beverage Ordinance.[3] Under the old regime, the Plaintiffs had been categorized as "restaurants," had been required to pay only a few thousand dollars for their alcohol licenses, and had been able to operate and serve alcohol seven days per week until 3:00 a.m.[4] The new Ordinance, however, substantially limited the hours of operation for alcohol-licensed venues. Now, alcohol licensed venues must close at 2:00 a.m. Monday through Saturday, and some are not allowed to serve alcohol on Sundays at all.[5]

The Ordinance also redefined several categories of businesses. For example, to qualify as a "restaurant," a business now needs to (1) have a primary purpose of preparing food or drink for on-site consumption, (2) derive at least 60 percent of its gross sales from the sale of food, and (3) only offer *live entertainment* if any entertainment is offered at all.[6] "Live entertainment," meanwhile, is defined by the Ordinance as "a vocal or instrumental performance

---

[1]  Compl. ¶¶ 37, 48, 72.

[2]  *Id.* at ¶¶ 38, 45, 54.

[3]  *Id.* at ¶ 17.

[4]  *Id.* at ¶¶ 36, 40, 44, 70, 71.

[5]  *Id.* at ¶ 17.

[6]  Alcoholic Beverage Ordinance § 4-103 [Doc. 3-2].

by a natural person or persons physically present in the establishment while delivering the performance."[7] Importantly, however, the Ordinance also contains a unique carve out from this broad definition, as it states that "[l]ive entertainment specifically excludes disc jockeys . . . ."[8]

When the Plaintiffs applied to renew their alcohol licenses for 2018, they designated themselves as "restaurants" as they had done previously.[9] The City's Finance Director, however, said that the Plaintiffs were not "restaurants" because they qualified as "entertainment venues."[10] Under the Ordinance, an alcohol licensed business can now be labeled as an "entertainment venue" if it has "at least one of the following characteristics: (1) has a disc jockey; (2) has a stage; or (3) has a dance floor."[11] Businesses that fall under the "entertainment venue" category are now required to pay significantly higher license fees than other licensed businesses – approximately $150,000 compared to approximately $5000-8000.[12] Because the Plaintiffs had only submitted the lesser fees required of restaurants, the Finance Director denied their applications. The Plaintiffs

---

[7]    *Id.*

[8]    *Id.*

[9]    Compl. ¶¶ 82-83.

[10]    *Id.* at ¶ 84.

[11]    Alcoholic Beverage Ordinance § 4-103.

[12]    Compl. at ¶ 22. *See also* Alcoholic Beverage Application Fee Schedule, at 1-2 [Doc. 3-3].

appealed these denials to the City's Alcohol Board. Hearings were held at which the Plaintiffs voiced statutory and constitutional objections to the new Ordinance.[13] But on February 13, 2018, the Alcohol Board affirmed the Director's denials.[14]

Meanwhile, the City continued to grant "restaurant" alcohol licenses to other businesses that employ deejays, or have stages, or dance floors, including Pink Pony.[15] Pink Pony is a white-owned strip club located in the City that caters to a predominately white clientele.[16] It features stages for the dancers, and employs deejays.[17] In November 2014, Pink Pony and the City entered into an Exit Transition Agreement in order to settle long-running litigation between the two parties. Under the Agreement, which lasts until 2020, Pink Pony agreed to pay the City $225,000 annually. In exchange, Pink Pony is allowed to continue operating its sexually oriented business, and is allowed to sell and serve alcoholic beverages, as long as it otherwise complies with the permitting and fee requirements of the City's Alcohol Ordinance (notwithstanding the Ordinance's blanket ban on granting alcohol licenses to sexually oriented

---

[13]    *Id.* at ¶ 86.

[14]    *Id.* at ¶ 87.

[15]    *Id.* at ¶¶ 88, 90, 98.

[16]    *Id.* at ¶ 92.

[17]    *Id.* at ¶ 91.

businesses).[18] Despite the fact that Pink Pony employs deejays and contains stages, however, the City has continued to grant it an alcohol license as a "restaurant," and has allowed Pink Pony to serve alcohol seven days per week until 4:00 a.m.[19]

After the Plaintiffs' appeals were denied by the City's Alcohol Board, the Plaintiffs each filed separate actions in the Superior Court of DeKalb County seeking writs of certiorari to review the City's denials of their license applications, which the Plaintiffs recently dismissed voluntarily. About one month later after filing their state actions, the Plaintiffs filed this action, asserting claims under 42 U.S.C. § 1983 for violations of the First Amendment, Due Process Clause, and Equal Protection Clause of the United States Constitution; a claim for a violation of the Georgia Constitution's Takings Clause; a separate count for a petition for a writ of certiorari; and a claim for attorney's fees.[20] The Plaintiffs seek declaratory and injunctive relief, as well as damages. The Plaintiffs now move for a preliminary injunction, and the City moves to dismiss the Plaintiffs' Complaint.

---

[18] *Id.* at ¶ 93. The Agreement also stated that if the City's hours of operations changed under the Alcohol Ordinance, the SOB Fee would either increase or decrease by $25,000 for every additional or lost thirty minute increment, respectively. *See* Exit Transition Agreement, Ex. E [Doc. 3-4].

[19] Compl. ¶¶ 98, 112.

[20] *Id.* at ¶¶ 105-30.

## II. Legal Standards

### A.     Preliminary Injunction Standard

A "preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites."[21] In order to obtain a preliminary injunction, a movant must demonstrate: "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest."[22] "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."[23] "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."[24] "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the

---

[21]     *Northeastern Fla. Chapter v. Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

[22]     *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985); *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir. 1994).

[23]     *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

[24]     *Id.*

evidence is 'appropriate given the character and objectives of the injunctive proceeding.'"[25]

## B.    Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute.[26] Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks."[27] Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."[28] On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion.[29]

"'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the

---

[25]        *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

[26]        Fed. R. Civ. P. 12(b)(1).

[27]        *Garcia v. Copenhaver, Bell & Assocs., M.D.'s*, 104 F.3d 1256, 1261 (11th Cir. 1997); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

[28]        *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit*, 613 F.2d 507, 511 (5th Cir. 1980)).

[29]        *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

pleadings, such as testimony and affidavits, are considered.'"[30] The presumption

of truthfulness does not attach to the plaintiff's allegations.[31] Further, "the

existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims."[32]

Meanwhile, a complaint should be dismissed under Rule 12(b)(6) only

where it appears that the facts alleged fail to state a "plausible" claim for

relief.[33] A complaint may survive a motion to dismiss for failure to state a claim,

however, even if it is "improbable" that a plaintiff would be able to prove those

facts; even if the possibility of recovery is extremely "remote and unlikely."[34] In

ruling on a motion to dismiss, the court must accept the facts pleaded in the

complaint as true and construe them in the light most favorable to the

plaintiff.[35] Generally, notice pleading is all that is required for a valid

---

[30]     *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511).

[31]     *Id.*

[32]     *Scarfo v. Ginsberg*, 175 F.3d 957, 960-61 (11th Cir. 1999).

[33]     *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[34]     *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[35]     *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

complaint.[36] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

## III. Discussion

### A.    Preliminary Injunction

Although the Plaintiffs assert a number of claims in their Complaint, they only base their motion for a preliminary injunction on two of them: (1) a First Amendment claim as to the Alcohol Ordinance's ban on non-live entertainment in restaurants, and (2) an Equal Protection claim alleging that the City is selectively enforcing the Alcohol Ordinance's operating hours.[37] In order to satisfy the "substantial likelihood of success" prong, the Plaintiffs need only demonstrate that they would likely win on at least one of these claims. Because the Plaintiffs demonstrate a substantial likelihood of success on their Equal Protection claims, the Court need not address the First Amendment claim at this time.

#### 1.    Substantial Likelihood of Success

The Plaintiffs' equal protection claim is that the City is selectively enforcing the Alcoholic Beverage Ordinance's operating hours and fee require-ments against the Plaintiffs, while allowing other businesses to avoid the Code's

-----------------

[36]    *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[37]    *See* Pls.' Br. in Supp. Mot. for Prelim. Inj., at 1.

new restrictions. This is a "class of one" equal protection claim.[38] "To prevail on a 'class of one' equal protection claim, [the] Plaintiffs must show they were intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment."[39] In order to be "similarly situated," the Plaintiffs and the other businesses "must be 'prima facie identical in all relevant respects.'"[40] Although the Complaint contains allegations of numerous businesses being allowed to renew their alcohol licenses as restaurants despite having deejays or dance floors,[41] the Plaintiffs' brief only addresses Pink Pony. Thus, the Court will focus its analysis on Pink Pony as the relevant comparator.

The Plaintiffs and Pink Pony both currently hold or seek to hold alcohol licenses, and are therefore subject to the requirements of Brookhaven's Alcoholic Beverage Ordinance. The current Ordinance does not leave room for discretion. It makes clear that it is "unlawful for any person to sell . . . any alcoholic beverage without a license from the city" to do so.[42] Additionally, it states that each application for an alcohol permit "*shall* include payment of all applicable

---

[38]     *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[39]     *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010) (quoting *Olech*, 528 U.S. at 564).

[40]     *Id.* at 1264 (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007)).

[41]     Compl. ¶ 88.

[42]     Alcoholic Beverage Ordinance § 4-200(a) [Doc. 3-2]

licensing fees as set forth in the annual revenue ordinance."[43] Applicable fees are determined by an applicant's class and type. "Entertainment venues," in particular, are defined by the Code as:

> a place of business that is licensed to serve alcoholic beverages for on-premises consumption and meets at least one of the following characteristics: (1) has a disc jockey; (2) has a stage; or (3) has a dance floor.[44]

Pink Pony fits this description,[45] as do the Plaintiffs' nightclubs. Because the gravamen of the Plaintiffs' equal protection claim is that they have to follow the requirements of the Ordinance while Pink Pony does not, the businesses are similar in all relevant respects.

The City, however, argues that Pink Pony has operated in its current location for nearly thirty years and has been recognized as a lawful nonconforming use, whereas the Plaintiffs opened after Brookhaven was incorporated.[46] Although this argument may be relevant in a case involving zoning laws, it is not relevant in this context, which involves annually issued alcohol permits that do not provide any sort of vested right beyond the term of the license.

---

[43]     *Id.* at § 4-203(d)(1) (emphasis added).

[44]     *Id.* at § 4-103. Excluded from this definition are "Dinner Theaters," a separate category that is not relevant here.

[45]     *See* Exit Transition Agreement, Ex. C (showing that Pink Pony has a stage).

[46]     Def.'s Resp., at 23.

The City also argues that its settlement agreement with Pink Pony, which was "the result of extensive negotiation between Pink Pony and the City to resolve multiple lawsuits between them," sets it apart from the Plaintiffs.[47] But this argument does not hold water either. The agreement itself states that Pink Pony shall only have the right to receive an alcohol permit "[u]pon compliance with the permitting requirements set forth in the Alcohol Ordinance and the payment of the permitting fee required in the Alcohol Ordinance."[48] Nothing in the agreement suggests that these requirements are fixed to the Ordinance in effect at the time the parties agreed to the settlement. Rather, it indicates that Pink Pony must follow whatever the current code requires, just like every other applicant.[49] Further, to the extent that the settlement allows the City to circumvent its own duly enacted ordinances, the settlement would be *ultra vires*, and thus void, making it irrelevant to the consideration of whether Pink Pony and the Plaintiffs are similarly situated.[50] Significantly, Pink Pony is number 7 in the City's Top Ten Businesses Identified with Alcohol Permits in terms of

---

[47]      *Id.*

[48]      Exit Transition Agreement § 14(k).

[49]      *Id.* at Ex. E (stating that certain negotiated fees will change should the Alcohol Ordinance hours of operation change).

[50]      *See Lexra, Inc. v. City of Deerfield Beach, Fla.*, 593 Fed. Appx. 860, 865 (11th Cir. 2015) (finding settlement which allowed one bar to escape city's ordinances was *ultra vires*).

police calls for service and incidents. Josephine's Lounge is number ten with half the number of calls for service as Pink Pony.[51]

Given that the comparators are similarly situated, the issue is now whether they are being treated differently, and if so, whether such disparate treatment has a rational basis. Under the current Alcoholic Beverage Ordinance, most permits to sell distilled spirits, malt beverages, and wine for consumption on the premises cost between $5,000 to $8,000 annually.[52] The cost for "entertainment venues," like the Plaintiffs and Pink Pony, however, is about $150,000 annually.[53] This disparate treatment in and of itself is not necessarily an equal protection problem, as there are a number of potential reasons why Brookhaven might feel the need to charge higher fees for certain types of businesses.

What is an equal protection problem, however, is that the Code also states that "[s]exually-oriented businesses," like Pink Pony, "are specifically prohibited from receiving *any* license or permit under" the Alcoholic Beverage Ordinance.[54] Despite this clear prohibition, however, the City continues to grant Pink Pony permits to sell alcohol. Even so, despite the fact that Pink Pony should at least be labeled an entertainment venue under the Alcoholic Beverage Ordinance, the

---

[51]     *See* City's Certified Records 094 [Doc. 16-1].

[52]     Alcoholic Beverage Application Fee Schedule, at 1-2 [Doc. 3-3].

[53]     *Id.*

[54]     Alcoholic Beverage Ordinance § 4-201(b).

City continues to grant it these licenses as a restaurant, saving it from having to pay the higher license fees.[55] The City also allows Pink Pony to serve alcohol until 4:00 a.m. every day of the week.[56] Other alcohol licensed venues, however, like the Plaintiffs, can only serve alcohol until 2:00 a.m. and cannot sell alcohol at all on Sundays, traditionally the Plaintiffs' most profitable day of business.[57] There is no rational reason for this selective enforcement.[58] The distinction between "restaurants" and "entertainment venues" based upon whether live music is performed or music produced by deejays from prerecorded music appears to be totally arbitrary. It is therefore clear that the Plaintiffs would have a substantial likelihood of success on the merits of their equal protection claim.[59]

---

[55] Compl. ¶¶ 88, 90, 98.

[56] *See* Seutou Aff. ¶ 34; Besher Aff. ¶ 23; Kedir Aff. ¶ 18.

[57] *See* Alcoholic Beverage Ordinance § 4-302(a); Seutou Aff. ¶ 27; Besher Aff. ¶ 16; Kedir Aff. ¶ 11.

[58] *See Lexra*, 593 Fed. Appx. at 865 (collecting cases from multiple jurisdictions finding similar behavior "wholly arbitrary" and "not rationally related to a legitimate state interest.").

[59] The City also argues that the Plaintiffs have failed to demonstrate intentional discrimination based on invidious motives, bad faith, or impermissible considerations. But this is not the standard. *See Lexra*, 593 Fed. Appx. at 866 (stating that plaintiffs may establish "class of one" equal protection claims where they alleged disparate treatment, regardless of the defendant's intent).

## 2. Irreparable Injury

The Plaintiffs must also show that they would "suffer irreparable harm absent injunction relief."[60] The injury must be "neither remote nor speculative, but actual and imminent,"[61] and can be "'irreparable' only if it cannot be undone through monetary remedies."[62]

The City first argues that the Plaintiffs have failed to demonstrate that their alleged injuries are actual and immediate because they continue to sell alcohol. But this argument ignores the fact that the only reason why the Plaintiffs are able to do so is because the City has voluntarily elected not to enforce its own Ordinance while this litigation is ongoing. At any point, however, the City could choose to do otherwise. The City's argument is somewhat like telling a lobster not to worry about the pot of boiling water nearby because the cook has not put it in yet. Such a statement would bring little comfort to the lobster.

The City also argues that any alleged injuries could be remedied by money damages. Although this may be true when it comes to the license fees, it

---

[60] *S & M Brands, Inc. v. Georgia ex rel. Carr*, 230 F. Supp. 3d 1338, 1344 (N.D. Ga. 2017) (citing *Burk v. Augusta–Richmond Cty.*, 365 F.3d 1247, 1263 (11th Cir. 2004)).

[61] *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989)).

[62] *Id.*

is not necessarily true regarding the Alcoholic Beverage Ordinance's hours of operation provisions. As the Plaintiffs have said, Sundays are traditionally their busiest days of the week. The inability to open on Sundays could substantially hurt not just their bottom line, but also their reputation among their customers. They could lose significant business to competitors in other jurisdictions; business which may not return even if they were to win this case. Such injuries are not easily compensable through money damages. Thus, the Plaintiffs have demonstrated that the Alcoholic Beverage Ordinance would cause them irreparable injury.

### 3. Balance of Harms and the Public Interest

The balance of harms is also in the Plaintiffs' favor. The Plaintiffs seek to continue serving alcohol on Sundays and operating until 3:00 a.m. While it is normally the case that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury,"[63] that is less of a concern in a case like this, where the City has already allowed another party to be effectively exempt from the laws at issue. For the same reason, the Court also finds that granting a preliminary injunction in this case would not disserve the public interest.

---

[63] *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

B.    Motion to Dismiss

1.    Standing

The Defendant, meanwhile, argues that the Plaintiffs' Complaint should be dismissed because they lack standing. Under Article III, the jurisdiction of federal courts is limited to "Cases" and "Controversies."[64] To satisfy the case-or-controversy requirement, a plaintiff must establish standing.[65] This requires the plaintiffs to show that: (1) they suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the complained of conduct of the defendant; and (3) it is likely that the requested relief will redress or remedy the alleged injury.[66]

Here, the City contends that the Plaintiffs' claims do not satisfy the third prong: redressability. First, the City argues the Plaintiffs' alleged injuries are not redressable because they do not allege sufficient facts to show that they qualify as restaurants under the Alcoholic Beverage Ordinance. The Plaintiffs were denied  an alcohol license for failure to pay the fees required – nearly $150,000 annually – for an "entertainment venue." The City characterizes the Plaintiffs' desired relief as wanting a "restaurant" alcohol license, which would require the Plaintiffs to show, among other things, that they derive "at least 60

---

[64]    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

[65]    *Steel Co. v. Citizens For a Better Env.*, 523 U.S. 83, 102 (1998).

[66]    *Id.* at 103.

percent of gross sales from the sale of prepared meals and food."[67] Because they have not alleged such a fact in their Complaint, the City argues that their Complaint should be dismissed.

But this is a fundamentally flawed argument based on an overly formal reading of the *Twombly* and *Iqbal* standard. The Plaintiffs need only plead enough facts to state a plausible claim for relief. Here, the Complaint clearly alleges that the Plaintiffs were consistently granted permits as restaurants in the past under the previous versions of the City's Alcohol Ordinance.[68] Those versions still required restaurants to derive at least 60 percent of their revenue from the sale of food.[69] And there is no evidence that the City has ever tried to revoke or deny the Plaintiffs' alcohol licenses in the past on the basis that they failed to meet this 60 percent standard. Nor is that the basis of the City's denial in this case. Thus, the City has created a presumption that the Plaintiffs continue to meet this standard.

Second, the City argues that the Plaintiffs' claims are not redressable because they are separately in violation of the City's Zoning Ordinance. The Zoning Ordinance prohibits nightclubs and other late-night establishments from

---

[67]     Alcoholic Beverage Ordinance § 4-103.

[68]     Compl. ¶¶ 36, 40, 44, 70, 71.

[69]     Brookhaven, Ga., Code § 4-1 (2017) (repealed by Brookhaven, Ga., Ordinance No. 2017-10-02 (Oct. 10, 2017)).

operating within 1,500 feet of a residential area.[70] The City argues that the Plaintiffs qualify as nightclubs, and are therefore prohibited by the Zoning Ordinance from operating in their current locations. But this argument suffers from a similar flaw as the argument above, namely, that this is not why the City denied the Plaintiffs' applications for alcohol licenses. Further, the City has never before tried to enforce this Ordinance against the nightclubs. If it wishes to do so in a separate counterclaim, it may do so, but otherwise it is totally irrelevant to the issues of whether licenses should have been granted under the Ordinance or whether the Ordinance is unconstitutional.[71]

## 2. *Pullman* Abstention

The Defendant also argues that this Court should abstain from exercising its jurisdiction pursuant to the doctrine first articulated in *Railroad Commission of Tex. v. Pullman Co.*[72] Under the *Pullman* doctrine, federal courts are given the ability to abstain from exercising jurisdiction in "deference to state court resolution of underlying issues of state law."[73] The purpose of the *Pullman* doctrine is to:

---

[70]     Def.'s Reply Br., at 6.

[71]     Such arguments might be potentially relevant to a counterclaim by the City, but as it stands, the City has not asserted one.

[72]     312 U.S. 496 (1941).

[73]     *Rindley v. Gallagher*, 929 F.2d 1552, 1554 (11th Cir. 1991) (quoting *Harman v. Forssenius*, 380 U.S. 528, 534 (1965)).

[A]void unnecessary friction in federal-state functions, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. Because abstention is discretionary, it is only appropriate when the question of state law can be fairly interpreted to avoid adjudication of the constitutional question.[74]

In order to qualify for *Pullman* abstention, "(1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented."[75] At the same time, it is also well established that abstention is an "extraordinary and narrow exception" to a federal court's obligation to hear constitutional claims.[76] Thus, it should be exercised only in "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."[77]

This case does not involve such exceptional circumstances. The City argues that the Court should abstain because the issue of statutory caps on fees has not been dispositively addressed by Georgia courts. As part of their Complaint, the Plaintiffs argue that the City's alcohol license fees for entertainment venues violate O.C.G.A. § 3-4-48, which sets the maximum fee    a

---

[74]     *Pittman v. Cole*, 267 F.3d 1269, 1286 (11th Cir. 2001).

[75]     *Id.*

[76]     *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

[77]     *Id.; see also Reetz v. Bozanich*, 397 U.S. 82, 86 (1970) (recognizing that "[a]bstention certainly involves duplication of effort and expense and an attendant delay").

municipality or county can charge for licenses given "pursuant to this article" at no more than $5,000. If O.C.G.A. § 3-4-48 applies to this case, then clearly the City's license fees would be unlawful. But the Defendant argues that this provision applies only to situations regulated by Article 3 (Local Authorization and Regulations for Manufacture, Distribution, and Package Sales), which it says is not relevant here. Rather, the Defendant argues that the instant case is governed by Article 5 (Sales by the Drink), which contains no such maximum limit on license fees.

Apparently, there is no Georgia case law on this issue. The Defendant, therefore, argues that the issue has not yet been resolved by Georgia courts, meeting the first prong of the *Pullman* test. Further, the Defendant argues that if the Georgia courts agree with the Plaintiffs' position on the applicability of O.C.G.A. § 3-4-48, it will moot or fundamentally alter the rest of the constitutional issues.

Assuming for the moment that this is the type of unsettled issue of state law contemplated by *Pullman*, the City still fails to satisfy the second prong. While a published decision on the applicability of O.C.G.A. § 3-4-48 might address the license fee issue, it would not decide the equal protection issues related to operational hours discussed above. The only thing to be gained, therefore, would be delay or a frustration of the Plaintiffs' choice of a federal

forum. For these reasons, abstention under *Pullman* would be inappropriate in this case.[78]

## IV. Conclusion

For the reasons stated above, the Plaintiffs' Motion for Preliminary Injunction [Doc. 3] is GRANTED, and the Defendant's Motion to Dismiss [Doc. 8] is DENIED.  The City is enjoined from treating the Plaintiffs as "entertainment venues" under the Alcoholic Beverage Ordinance of 2017 with respect to Sunday sales (Section 4-302(a)(5) and the Alcoholic Beverage Application Fee Schedule until further Order of this Court.

SO ORDERED, this 26 day of July, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[78]    The City also argued in its motion that the Complaint should be dismissed for improper claim splitting. This argument was rendered moot, however, in light of the Plaintiffs' voluntary dismissal of their state actions. *See* Notice of Filing Dismissals of State Court Petitions [Doc. 15].